# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| N.A.A.C.P., BOSTON CHAPTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 78-850-DPW |
| | ) | |
| | ) | |
| ALPHONSO JACKSON, *Secretary of Housing* | ) | |
| *and Urban Development*, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF HUD'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUGGESTION TO THE COURT THAT IT LACKS SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(H)(3)

For the reasons cited below, the United States of America, on behalf of the Secretary of Housing and Urban Development ("HUD"), moves the Court to dismiss this action pursuant to Fed. R. Civ. P. 12(c) or 12(h)(3).[1]

---

[1] On March 12, 2007, the Court issued a scheduling order directing the parties to file "motions for summary judgment" by June 30, 2007. As examined at length in this brief, the Court has no jurisdiction to hear a dispositive motion on the Supplemental Complaint filed by the Plaintiff. Accordingly, HUD will treat the Plaintiff's prospective "motion for summary judgment" as a motion for enforcement of the consent decree, as provided in Part IV of the Decree. The case law of civil contempt, which delineates the Court's inherent power to enforce its orders, places the burden squarely on the Plaintiff to establish by clear and convincing evidence that HUD, *inter alia*, violated the Consent Decree and/or Modification Agreement. See p. 21-23, *infra*. This would impose a significantly higher burden on the Plaintiff than a "motion for summary judgment" on facts asserted in the Supplemental Complaint.

# I.  INTRODUCTION

In its Supplemental Complaint, the NAACP improperly attempts to bootstrap this Court's continuing jurisdiction over the Consent Decree into original subject matter jurisdiction for its newly asserted claims.  The exclusive basis for this Court's continuing jurisdiction over HUD, regarding HUD's obligations under the Consent Decree and Modification Agreement, are found in Part IV of the Decree.  There is no waiver of sovereign immunity which would allow the Court to entertain, again, an already adjudicated complaint, whether it is supplemented or not.

Plaintiff states that this Court has jurisdiction over the claims asserted against HUD in the Supplemental Complaint pursuant to the Administrative Procedure Act ("APA") and the Consent Decree.  With respect to jurisdiction under the APA, three rationales bar this Court from using the waiver of sovereign immunity found in the APA.  First, in order to use to APA as a means for relief, there must be an underlying statutory or regulatory violation.  No statutory or regulatory violation is asserted in the Complaint.  Second, if the Plaintiff claims that the statutory violation is the one asserted in the original Complaint, 42 U.S.C. § 3608(e)(5), then it has again failed to realize a waiver of sovereign immunity because the APA, specifically 5 U.S.C. § 706(1), may not be used to enforce broad and indiscreet statutory mandates.[2]  Third, even if the APA allowed jurisdiction,  the APA only provides

---

[2] Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004).  This case not only calls into question this Court's present jurisdiction to enforce 42 U.S.C. § 3608(e)(5) vis-a-vis a claim under the APA, but, potentially, the legitimacy of the Consent Decree itself, as NAACP v. Secretary of HUD, 817 F.2d 149, 160 (1st Cir. 1987) has been overruled

a waiver for injunctive relief, not for damages.  In paragraphs D(4) and (5) in the Plaintiff's Request for Relief, the nature of the claims asserted are for damages.

With respect to jurisdiction under the Consent Decree, while the Consent Decree provides this Court with continuing jurisdiction over HUD for the purposes of enforcement[3], that grant of jurisdiction may not be used to:  avoid the carefully circumscribed legal standards and burdens that attend a civil contempt action; increase HUD's obligations under the Decree;[4] or expand the availability of remedial action that Plaintiff might seek.  The proper vehicle for the Plaintiff's claim for relief under the Consent Decree would be a motion for enforcement in which this Court's remedial power would be constrained by the body of civil contempt case law.

Having invoked Fed. R. Civ. P. 15(d) - - apparently in an effort to simultaneously assert like claims against the Boston Housing Authority ["BHA"] and City of Boston ["Boston"] - - Plaintiff asks the Court to adjudicate facts, apply legal standards, and construct a remedy at HUD's expense outside a legal framework normally applied in an enforcement or civil contempt action. Thus, Plaintiff attempts to skirt the legal standards and waive the Federal Government's sovereign immunity to the claims found in the Supplemental

_____

*sub silentio*.

[3] See Ex. 1, Part IV, A of the Consent Decree.  "Jurisdiction is retained by the court for the purpose of enabling the plaintiff and HUD to apply to the court at any time for such further orders as may be necessary or appropriate for the construction implementation modification or enforcement of this Decree."  Id. at 9.

[4] See Ex. 1, Part IV, A of the Consent Decree.  "[N]o additional funding obligations not explicitly contained in this Decree shall be imposed on HUD."  Id. at 9.

Complaint by judicial fiat. Plaintiff may not now assert that HUD is subject to the Supplemental Complaint, and the damage claims found therein, simply because it provides a more convenient procedural trap to ensnare Boston and the BHA.

## II. PROCEDURAL BACKGROUND

"[I]n April 1978, the NAACP sued the Secretary and other officials of the Department of Housing and Urban Development (collectively "HUD"), claiming that HUD had failed "to enforce constitutional and statutory proscriptions against discrimination in Federally-assisted programs." NAACP v Secretary of HUD, 817 F.2d 149, 151 (2d Cir.1987). "Its complaint listed . . . acts and omissions related to HUD's . . . programs in the City of Boston." Id. [These] "acts and omissions . . . established violations of various civil rights statutes, including HUD's duty 'affirmatively to further' the Fair Housing Act's policies." Id. In 1983, this Court, after trial found, *inter alia*:

> that Boston has a history of racial discrimination in housing; that Boston suffers from a shortage of low-income family housing; that a higher proportion of black than white families are renters and a higher proportion of black than white renters are families with children (and thus that the housing shortage impacts more heavily on blacks than on whites); that Boston's neighborhoods are racially separate; and that "at least in part [as] the result of the lack of safe, desegregated housing in white neighborhoods" black families find it difficult to move out of black areas. . . . In the court's view, these facts added up both to a violation of HUD's "minority housing needs" regulation and to a violation of HUD's Title VIII duty "affirmatively to further" the Act's policy. In particular, it wrote that HUD's failure to use its "immense leverage under UDAG" to provide "desegregated housing so that the housing stock is sufficiently large to give minority families a true choice of location," in the context of Boston's history and practices, violated HUD's Title VIII [Fair Housing Act] obligations.

Id. at 151 (citing NAACP v. Harris, 567 F.Supp. 637, 640-41, 644 (D.Mass.1983)).

This Court's original finding of HUD's liability for Plaintiff's claims under 42 U.S.C. § 3608(e)(5), regarding HUD's failure administer the programs and activities relating to housing and urban development, was first dismissed after its liability finding because the Court held that there was no redress directly under the FHA **or** under the APA. NAACP v. Pierce, 624 F.Supp. 1083, 1086-93 (D.Mass.1985).[5]   The Second Circuit reversed and remanded holding that HUD's actions with respect to what the court perceived was HUD's responsibility under the FHA were not exempt from judicial review as prescribed by the APA. NAACP, 817 at 160-161.[6]   In light of the Second Circuit's ruling, this Court then

---

[5] At the time it issued its opinion, the Second Circuit was correct in noting that the jurisdictional source of any cause of action that the Plaintiff might have regarding alleged violations of section 3608 was the APA and that therefore the limitations applicable to APA claims circumscribed the Court's authority to find liability and issue a remedy under Section 3608.  See NAACP v. Secretary of HUD, 817 F.2d 149, 161 (1st Cir. 1987).  At the present time, even those limitations are irrelevant.  Any APA claim against HUD asserting a violation of section 3608 is now wholly precluded by the Supreme Court's decision in Norton v. SUWA.  See 542 U.S. at 67.

[6] Neither the United States nor its agencies may be sued under any statute unless Congress has clearly and unequivocally consented to the sovereign being sued under that statue for the relief which the plaintiff seeks.  See United States v. Nordic Village, 503 U.S. 30, 33-36 (1962).  While certain provisions of the Fair Housing Act ("FHA") may well prohibit certain conduct by the United States, or as is asserted in this case compel conduct by the United States, the FHA that does not permit suit against the sovereign directly under any of those statutes to remedy the violations.  See, e.g., Hohri v. United States, 782 F.2d 227, 245 n. 43 (D.C. Cir. 1986) ("none of the Civil Rights Acts waive sovereign immunity"); Unimex, Inc v. HUD, 594 F.2d 1060, 1061 (5th Cir. 1979) (("the United States has not consented to suit under the civil rights statutes"); United States v. Timmons, 672 F.2d 1373, 1380 (11th Cir. 1982) (same); Almonte v. Pierce, 66 F.Supp. 517, 524 (S.D.N.Y. 1987) (there is no waiver of sovereign immunity to sue HUD under the FHA or Title VI of the Civil Rights Act of 1964).  Accordingly, due to HUD's sovereign immunity from a claim brought directly under the FHA, the Court's only other recourse was to proceed under the APA in order to entertain a claim that HUD has failed

proceeded to issue its Declaratory Judgment and Final Decree, a remedial order, on June 23, 1989, as amended by this Court's Clarification and Amendment of Judgment, dated September 14, 1989.

The parties to this case entered into a Consent Decree which was approved by the Court on March 8, 1991. The second "whereas" notes that "all parties would like to resolve the concerns underlying their appeals, rather than have them adjudicated by the court of appeals." Consent Decree, p. 1. Further, it states that "the defendants have agreed to withdraw their appeal . . . upon the Court's approval of this Consent Decree and understanding that the terms of this Consent Decree **contain the sole obligations during the term of this Decree.**" Id. at 1-2 (emphasis added); see pp. 19-21, *infra*. The Consent Decree was modified by the Modification Agreement on February 8, 2000.

On May 23, 2005, Plaintiff filed a Motion for Further Orders for the Implementation and Enforcement of the Consent Decree, asserting that HUD was not fully funding the obligations it took on under the Decree and Modification Agreement in violation of that Decree and Agreement. On November 9, 2005, the Court entered an Order allowing Plaintiff a 60-day period to conduct discovery of HUD to find out, *inter alia*, if HUD had conspired with Congress to undermine the Consent Decree and Modification Agreement at issue in this case. On January 9, 2006, the Court denied Plaintiff's Motion for Further Orders without prejudice and ordered HUD to provide all documents by February 9, 2006. HUD produced

to comply with its duty to "affirmatively further fair housing."  See NAACP v. Secretry of HUD, 817 F.2d at 160-61.

-6-

additional "follow-up" documents responsive to Plaintiff's questions throughout the Spring of 2006.  A former HUD political appointee was deposed in March of 2006.  Even more documents were provided in response to additional follow-up questions throughout the summer.  Another former HUD employee was deposed in early August 2006.

On October 11, 2006, the Plaintiff filed a Motion for Leave to file a Supplemental Complaint asserting claims against HUD, the Boston Housing Authority, and the City of Boston.  On November 9, 2006, HUD notified the Court that it would not oppose the Plaintiff's Motion for Leave.  HUD filed its Answer to the Supplemental Complaint on December 1, 2006.  HUD filed its Answer to the Boston Housing Authority's Crossclaim on December 21, 2006.

### III.  THE UNITED STATES HOUSING ACT OF 1937 AND SECTION 8 VOUCHER PROGRAM

Congress originally enacted the United States Housing Act in 1937.  See 42 U.S.C. § 1437.  In 1974, Congress amended the Act through the Housing and Community Development Act of 1974, Pub L. No. 93-383, Tit. II, sec. 8(a) (codified at 42 U.S.C. sec 1937f) (hereinafter "Section Eight[7]").  Congress did so "for the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing ...." 42 U.S.C. § 1437f(a); see also, Davis v. Mansfield Metropolitan Housing Authority, 751 F.2d 180, 183 (6th Cir. 1984) (providing a general description of the Section Eight program,

---

[7] The present incarnation of the voucher program is called the "Housing Choice Voucher Program."

and noting that the program is a means by which lower income families receive rent subsidies). To achieve this end, the Act authorizes the Secretary of HUD to enter into annual contribution contracts with public housing agencies ("PHAs"). 42 U.S.C. § 1937f(b)(1). This statutory scheme does not provide for the Federal Government to administer the disbursement of funds to the owners of existing housing units; rather, "the statute encourages local decision-making: '[i]t is the policy of the United States ... to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs.'" Baker v. Cincinnati Metro. Housing Authority, 675 F.2d 836, 840 (6th Cir. 1982) (quoting 42 U.S.C. sec 1437f).

In furtherance of Congress's intent that the PHAs should have the authority and responsibility to administer housing programs within their jurisdictions, the Act provides that PHAs may enter into contracts to make assistance payments to owners of existing dwelling units. 42 U.S.C. § 1937f(b)(1). To remain eligible to receive Federal funding to administer the housing programs, each PHA must submit a plan annually to HUD describing the administrative details of its Section Eight program and its compliance with federal and state equal housing requirements. 42 U.S.C. § 1437f(b); 24 C.F.R. § 982.54. Each PHA must administer its program in accordance with the Fair Housing Act and other federal civil rights statutes. 24 C.F.R. § 982.53. But to be sure, the responsibility for administering the various Section Eight programs throughout the nation rests upon the PHAs. 42 U.S.C. § 1437f(a).

The Section Eight program relevant to this action is governed by 24 C.F.R. § 982.1 - 982.643. The responsibility for administering the HCV Program, like all other Section Eight

programs, resides with the PHAs.  In sum, though the Section Eight Voucher Program was established by Congress and is funded by the Federal Government, the PHAs bear the responsibilities associated with administering the program.[8]

## IV.  GOVERNING LEGAL STANDARDS

### A.    MOTION  FOR JUDGMENT ON THE PLEADINGS

"Federal Rule of Civil Procedure 12(c) allows a party, 'after the pleadings are closed but within such time as not to delay the trial, [to] move for judgment on the pleadings.'" Feliciano v. Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998), quoting Fed. R. Civ. P. 12(c). In evaluating a Rule 12(c) motion, the court must accept the non-moving party's well-pleaded facts as true and draw all reasonable inferences in his favor.  E.g., Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).  The moving party should prevail if it appears beyond a doubt that the non-moving party cannot prove facts in support of his claim that would entitle him to relief.  E.g., Feliciano, 160 F.3d at 788.

---

[8] Under the Section Eight Voucher Program, the PHA's responsibilities include: developing an administrative plan establishing policies and procedures that are in accordance with HUD requirements, 24 C.F.R. § 982.54; determining who is elgible to participate in the program and selecting eligible applicants for participation, 24 C.F.R. §§ 982.201 - 982.207; issuing vouchers to eligible families, 24 C.F.R. § 982.302; determining which property owners are eligible for participation in the Section Eight Program, 24 C.F.R. § 982.306; establishing voucher payment standard amounts based on fair market rent within the PHA's jurisdiction, 24 C.F.R. §§ 982.503 - 982.505; paying the housing assistance payment to the property owner, 24 C.F.R. § 982.514; and re-verifying the family's eligibility for participation in the program at least annually, 24 C.F.R. § 982.516.

**B.     Suggestion to the Court That It Lacks Subject Matter Jurisdiction**

Pursuant to Federal Rule of Civil Procedure 12(h)(3), the court shall dismiss an action "[w]henever it appears by suggestion of the parties or otherwise" that the court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).  Courts evaluate Rule 12(h)(3) motions under the same standard applied to Rule 12(b)(1) motions.  E.g., Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 880 n.3 (3d Cir. 1992); Peterson v. Cont'l Airlines, Inc., 970 F. Supp. 246, 248-249 (S.D.N.Y. 1997).  Applying that standard, the court must dismiss if "the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction."  Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003)(articulating standard applied to 12(b)(1) motion).

Rule 12(h)(3) motions and Rule 12(b)(1) motions differ in two significant ways:  (1) the former "may be asserted at any time and need not be responsive to any pleading of the other party." Berkshire Fashions, 954 F.2d at 880 n.3; and (2) the former "need not state with particularity the grounds in favor of dismissal in order to succeed, as do other motions," Canadian St. Regis Band of Mohawk Indians v. New York, 388 F. Supp. 2d 25, 29 (N.D.N.Y. 2005).  In fact, "once subject matter jurisdiction has been challenged, the burden of establishing jurisdiction rests with the party asserting that it exists."  Id. (internal quotations omitted).

The burdened party must establish the court's jurisdiction by a preponderance of the evidence.  Id.  While the court "must accept as true all material factual allegations in the complaint[,]" the court should not draw "argumentative inferences" favorable to the

burdened party.  Peterson, 970 F. Supp. at 249.

## C.    THE UNITED STATES SOVEREIGN IMMUNITY FROM SUIT

 "It is well settled that the United States, as sovereign, may not be sued without its consent." Murphy v. U.S., 45 F.3d 520, 522 (1st Cir. 1995) (internal citations omitted). "Jurisdiction must be found in an express Congressional waiver of immunity or consent to be sued." Id.  "The inquiry, then, is not whether there is one, jurisdiction, or the other, waiver of immunity, but whether there is both, and that requires examining all that Congress has had to say on the subject." Quality Tooling, Inc. v. United States, 47 F.3d 1569, 1575 (Fed. Cir.1995); see also, Murphy, 45 F.3d at 522 (holding that, without a Congressional waiver of sovereign immunity, the Court lacks subject matter jurisdiction over a lawsuit against the United States); Fed. Deposit Ins. Co. v. Meyer, 510 U.S. 471 (1994)(same).

A waiver of the Federal Government's sovereign immunity may only be made by Congress, and it must unequivocally expressed in the statutory text.  Lane v. Pena, 518 U.S. 187, 192 (1996).  The statute upon which the plaintiff suing the Federal Government relies must "clearly and unequivocally" waive the Federal Government's immunity from suit.  See, e.g., Block v. North Dakota, 461 U.S. 273, 287 (1983); In re Rivera Torres, 432 F.3d 20, 32 (1st Cir. 2005).  "In general, statutes waiving sovereign immunity should be strictly construed in favor of the United States.  Courts may not enlarge . . . beyond what the language [of the statute creating the waiver] requires." Murphy, 45 F.3d at 522 (internal citations and quotations omitted).

# V. **DISCUSSION**

Plaintiff cites two bases for jurisdiction over HUD in paragraph 5 of its Supplemental Complaint: "This Court has jurisdiction over the claims against HUD pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* and the Consent Decree entered in the Original action, as modified on February 8, 2000, by an Agreement Among [the NAACP, HUD, Boston and the BHA]." Id. p. 3, ¶5.

The APA may not be used to waive HUD's sovereign immunity for three distinct reasons. First, no waiver exists because no underlying statutory or regulatory violation has been asserted. The APA cannot be used as a vehicle to enforce a Consent Decree. Second, if, in fact, Plaintiff claims that the statutory violation implicit in the Supplemental Complaint is the claim that HUD violated the FHA that was first stated in the original Complaint some 28 years ago, Plaintiff once more fails to establish a valid waiver of sovereign immunity because of significant changes in the case law concerning using the APA as an enforcement tool of broad statutory mandates. Third, the APA only provides a waiver for injunctive relief, not for damages. In paragraphs D(4) and (5) in the Plaintiff's Request for Relief, the nature of the claims asserted are for damages.

The second basis for the Court's Jurisdiction is the Consent Decree. While HUD acknowledges that the Consent Decree provides this Court with continuing jurisdiction over HUD for the purposes of injunctive enforcement of the putative obligations found therein[9],

---

[9] See Ex. 1, Part IV, A of the Consent Decree. "Jurisdiction is retained by the court for the purpose of enabling the plaintiff and HUD to apply to the court at any time for such

that grant of jurisdiction may not be used as a Trojan horse for the Plaintiff's to assert that

HUD has obligations or a responsibility to cure any violation of the Decree in the

Supplemental Complaint that would impose a greater obligation upon HUD than the decree

itself provided.[10]  The proper vehicle for the Plaintiffs claim for relief under the Consent

Decree would be a motion for enforcement in which this Court's remedial power would be

circumscribed by the body of civil contempt case law, and Plaintiff's high burden would be

specifically prescribed.

**A.    JURISDICTION UNDER THE APA**

**1.    The APA Requires an Underlying Statutory, Regulatory or Constitutional Violation**

"As a procedural statute, the APA does not expand the substantive duties of a federal

agency." Sierra Club v. Martin, 110 F.3d 1551, 1554-1555 (11th Cir. 1997).  Accordingly,

"[t]here is no right to sue for violation of the APA in the absence of a 'relevant statute'

whose violation 'forms the legal basis for [the] complaint.'" El Rescate Legal Servs., Inc.

v. Executive Office of Immigration Review, 959 F.2d 742, 753 (9th Cir. 1991), quoting

Lujan v. National Wildlife Fed'n, 497 U.S. 871, 883 (1990); see also Preferred Risk Mut. Ins.

Co. v. United States, 86 F.3d 789, 792 (8th Cir. 1996) ("plaintiff must identify a substantive

statute or regulation that the agency action had transgressed and establish that the statute or

_____

further orders as may be necessary or appropriate for the construction implementation
modification or enforcement of this Decree." Id. at 9.

[10] See Ex. 1, Part IV, A of the Consent Decree.  "[N]o additional funding obligations no
explicitly contained in this Decree shall be imposed on HUD."  Id. at 9.

regulation applies to the United States"). Thus, the APA only entitles persons "adversely affected or aggrieved by agency action," 5 U.S.C. § 702, to seek to "set aside agency action … not in accordance with law" or to "compel agency action unlawfully withheld," 5 U.S.C. §706, where that action contravened federal statutory, regulatory, or constitutional law. See, e.g., Defenders of Wildlife v. United States Envtl. Prot. Agency, 415 F.3d 1121, 1126 (10th Cir. 2005) (court "will not overturn an agency action unless it[, as stated in 5 U.S.C. § 706(2)(A)-(D),] 'fails to meet *statutory, procedural or constitutional* requirements, or unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'") (emphasis added); see also Martin, 110 F.3d at 1555 ("An agency's actions could only fail to be 'in accordance with law' when that agency's actions are *subject to that law*.") (emphasis in original).

The only violations Plaintiff explicitly mentions or implicitly refers to in the Supplemental Complaint are violations of the Consent Decree and Modification Agreement. The APA is not the appropriate statutory vehicle to remedy those claims. If HUD is not in compliance with a Court Order, the appropriate remedy is a motion for enforcement using the Court's injunctive contempt power. There is no waiver of sovereign immunity under the APA in this case.

## 2. Even if Jurisdiction is Proper under the APA, 42 U.S.C. 3608(e)(5)—the Underlying Statutory Violation--Cannot Be Remedied by the APA

In its Supplemental Complaint, Plaintiff states that part of the Court's jurisdiction "over the claims against HUD is the [APA]. . . ." (Supplemental Complaint, p. 3, ¶5). As

noted in part 1, *supra*, the APA is only a procedural means to enforce a legal right or alleviate a legal wrong committed by a federal agency through its actions. In instant case, it was/is HUD's alleged failure to affirmatively further fair housing pursuant to the mandate found in 42 U.S.C § 3608(e)(5) of the Fair Housing Act that this Court, had its Order been implemented, was going to enforce pursuant to the APA when HUD entered into the settlement preventing that further action.

By asserting jurisdiction in the Supplemental Complaint under the APA, Plaintiff draws a direct line from the § 3608(e)(5) statutory violation found in the original case to HUD's allegedly unmet obligations under the Consent Decree. Thus, for the purposes of establishing jurisdiction, Plaintiff inextricably links an APA remedy for the Section 3608 violation to any potential cure for a failure to meet obligations under the Consent Decree. For that very reason, in light of Supreme Court's unanimous decision of <u>Norton v. SUWA</u>, *supra,* this Court has no jurisdiction over HUD for enforcement of the Consent Decree if it uses the APA as a basis for that jurisdiction.

### a. NORTON V. SUWA

The facts of the <u>SUWA</u> case are remarkable in their similarity to the original <u>NAACP v Pierce</u> action, the suit which provided the *raison d'etre* for implementation of the Consent Decree. <u>SUWA</u> was brought by several wilderness protection organizations in connection with the Interior Department's responsibilities to manage public lands. 542 U.S. at 58-59. The specific lands at issue in that case had been designated "wilderness study areas," which meant that the Interior Department was statutorily obligated to manage them in a manner that

-15-

would protect them from degradation. Id. at 59.  The plaintiffs claimed that Interior had violated its express obligation to take protective action, and that in other ways it had failed to comply with affirmative statutory obligations.  Specifically, the plaintiffs contended that these failures on the part of the agency entitled them to relief in light of the APA's creation of a right to sue for an order compelling agency action unlawfully withheld.  Id. at 61. (citing U.S.C. § 706(1)).

The statute articulating the basis for the non-degradation at issue in SUWA required Interior to "continue to manage [wilderness areas] in a manner so as to not impair the suitability of such areas for preservation as wilderness."  43 U.S.C. § 1782(c).  The court analogized that statute to other provisions, which required one agency or another to:

> manage wild free-roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance," or "manage the [New Orleans Jazz National] [H]istorical Park in such a manner as will preserve and perpetuate knowledge of the history of jazz," or "manage the [Steens Mountain] Cooperative Management and Protection Area for the benefit of present and future generations.

SUWA, 542 U.S. at 67 (citing 16 U.S.C. §§ 1333(a), 410bbb-2(a)(1), 460nnn-12(b)).

The Supreme Court rejected the plaintiffs' claims.  The only type of agency action that may be compelled under this provision, it held, is action that is "legally required." Id. at 64.  The Court held that this limitation "rules out judicial direction of even discrete agency action that is not demanded by law." Id. at 65.

Accordingly, a claim under § 706(1) can proceed "only where a plaintiff asserts that an agency failed to take a *discreet* agency action that it is *required to* take." Id. at 64

-16-

(emphasis in the original). These limitations rule out several kinds of challenges. The limitation to discrete agency action "precludes . . . broad programmatic attack[s];" plaintiffs "seeking *wholesale* improvement of a program by court decree, rather than in the offices of the Department or the halls of Congress;" and "judicial direction of even discrete agency action that is not demanded by law." Id. at 64-65 (emphasis in the original). Because the statutory terms on which the plaintiffs relied did not require discrete agency action–the preservation of wilderness areas–the Court rejected its claims. Id. 66-67.

**b.** **SUWA BARS THIS COURT FROM ISSUING REMEDIAL ORDERS TO ENFORCE SECTION 3608(E)(5) WHILE USING THE APA AS THE BASIS FOR ITS JURISDICTION**

SUWA's effect on NAACP v. Jackson is obvious. The legal obligations discussed in SUWA are also similar in nature to what this Court and the Second Circuit observed were HUD's responsibilities under its mandate to "affirmatively further fair housing;" HUD's violation of which this Court found on in the Order on which the Consent Decree is premised. See NAACP v. Piece, 721 F. Supp. 361.

The SUWA Court observed that with respect to none of these provisions would the APA allow section 706(1) review. Id. at 67. In other words if the statutory mandate is so vague that it does not dictate specific discreet actions that the agency must take, then the Court cannot step into the void and compel what it considers as appropriate actions for the agency to take so as to further compliance with that mandate.[11] "The prospect [of such]

_____

[11] At the very best, this language casts a pall onto the First Circuit's 1987 NAACP v. HUD decision. Taken to its logical conclusion, Norton vitiates the very basis for Consent

pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA" Id.[12]

The provision of the FHA on which this Court based its 1989 liability finding is, if anything, less specific as to what is required of the government than the SUWA statutes.[13] In light of the clear language of the SUWA Court, the First Circuit's NAACP v. Secretary of HUD, 817 F.2d 149 (1st Cir. 1987) has been effectively overruled, meaning that this Court may no longer rely upon the 1978 Complaint or the Supplemental Complaint filed in 2006 to issue any remedial order of any kind to enforce whatever non-discrete and undefined and unwritten obligations that the Plaintiff seeks to divine out of 42 U.S.C. § 3608(e)(5).

### c. THIS COURT LACKS JURISDICTION UNDER THE APA OR OTHERWISE OVER ANY CLAIM ASSERTED IN THE COMPLAINT FOR DAMAGES

The Court lacks jurisdiction to entertain a claim asserted in the Supplemental Complaint due to the nature of some the remedial claims found therein.  See Supplemental

---

Decree and Modification Agreement.

[12] The SUWA Court also noted:

> If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved - which would mean that it would become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management.

Id. at 66-67.

[13] 42 U.S.C. § 35608(e)(5) requires the Secretary of HUD to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of this subchapter."  Id.

<u>Complaint</u>, Request for Relief, ¶ D(5), p. 16 ("HUD, the BHA, and the City shall, jointly or

severally, provide $295,000.00 to MBHP to fund housing search counseling services in

conjunction with its administration of 400 Litigation Vouchers transferred to the BHA.").

Any honest reading of paragraph D(5) of the Plaintiff's Prayer for Relief shows that it is for

damages.  No matter how the Plaintiff seeks to dress up this remedial claim as something

other than strictly monetary relief, this Court does not have jurisdiction to entertain a claim

for over $10,000 against the United States. Jurisdiction is exclusive to the Court of Federal

Claims. The Tucker Act bars this Court from proceeding any further on that claim.[14]

The APA waives sovereign immunity for "an action in a court of the United States

seeking relief other than money damages" but also acknowledges the inapplicability of its

waiver where "any other statute that grants consent to suit expressly or impliedly forbids the

relief which is sought." 5 U.S.C. § 702.  It is well-settled that the Tucker Act, 28 U.S.C.

§ 1491, which provides exclusive jurisdiction in the Court of Federal Claims for actions

based on express or implied contracts with the United States and precludes relief other than

monetary damages for contract claims, renders the APA's waiver inapplicable for contract

claims seeking non-monetary relief.  <u>E.g.</u>, <u>Robbins v. United States Bureau of Land Mgmt.</u>,

438 F.3d 1074, 1080-83 (10th Cir. 2006); <u>VS Ltd. P'ship</u>, 235 F.3d at 1112 (dismissing

contract claim seeking equitable relief because "[T]he Tucker Act does not confer concurrent

jurisdiction over all equitable claims in district courts"); <u>Presidential Gardens Assocs. v.</u>

---

[14] 28 U.S.C. § 1491(a)(1), also known as the "Big Tucker Act."  <u>See</u> <u>Tortorella v. U.S.</u>,
__F.Supp.2d__ (D. Mass. 2007), 2007 WL 1243939.

Dept. of Hous. & Urban Dev., 175 F.3d 132, 143 (2d Cir. 1999)(dismissing claim seeking to enjoin HUD's sale of mortgage notes); Tuscon Airport Auth. v. Gen. Dynamics Corp., 136 F.3d 641, 646-47 (9th Cir. 1998); North Star Alaska v. United States, 14 F.3d 36, 38 (9th Cir. 1994); Transohio Sav. Bank v. Office of Thrift Supervision, 967 F.2d 598, 607-613 (D.C. Cir. 1992); Coggeshall Dev. Corp. v. Diamond, 884 F.2d 1, 3 (1st Cir. 1989).

The Supreme Court's decision in Bowen v. Massachusetts, 487 U.S. 879 (1988), does not mandate a contrary result. Of the Circuits that have held the APA waiver inapplicable for non-monetary contract claims, many have explicitly considered Bowen and found that its holding does not address this issue. See North Star Alaska, 14 F.3d at 38 ("Bowen, however, did not involve a contract claim and it did not address the 'impliedly forbids' limitation on the APA's waiver of sovereign immunity. We therefore agree with the D.C. Circuit that '[w]ithout more certain direction from the Supreme Court, we decline to overrule this Court's very specific holdings that the APA does *not* waiver sovereign immunity for contract claims seeking [equitable] relief.'" (quoting Transohio Sav. Bank, 967 F.2d at 613)(emphasis in original)); see also Tuscon Airport, 136 F.3d at 646.

In order to determine whether a claim sounds in contract, a court must conduct its own examination of the true nature of the case, and the plaintiff's characterization of its claim is of no significance. E.g., Sellers v. Brown, 633 F.2d 106, 108 (8th Cir. 1980); Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994)("Regardless of the characterization of the case . . . we look to the true nature of the action in determining the existence or not of jurisdiction"); Coggeshall, 884 F.2d at 3 ("this is an action for breach of contract, irrespective

of how it is packaged"). The key inquiry is "the source of the rights upon which the plaintiff bases its claim." Megapulse, Inc. v. Lewis, 672 F.2d 959, 968 (D.C. Cir. 1982). Where a litigant seeks a declaration of its rights pursuant to a contract, rather than a declaration of the effect of a statute or regulation upon its contractual rights, the litigant's claim sounds in contract. E.g., Tuscon Airport, 136 F.3d at 647; Coggeshall, 884 F.2d at 3; North Star Alaska, 14 F.3d at 37.

Plaintiff might respond by citing the ostensibly broad language of Bowen v. Massachusetts.

> "If, however [the waiver of sovereign immunity under the APA] is construed authorize a district court to grant monetary relief-other than traditional 'money damages'-as an incident to the complete relief that is appropriate in the review o f agency action, the fact that the purely monetary aspects of the case could have been decided in Claims court is not a sufficient reason to bar that aspect of the relief available in a district court."

487 U.S. 879, 910 n. 48.

Plaintiff's would-be defense fails for two reasons. First, as it has been explained, *supra*, the APA does not apply. Its waiver is of sovereign immunity is not available. However, if the APA was deemed by the Court as a valid waiver of sovereign immunity in this case, then it would apply a standard that this Court has adopted from of the Federal Circuit when looking at a claim against the government for money.

> To thwart attempted forum shopping, our cases have emphasized that in determining whether the plaintiff's suit is to be heard in district court or the Court of Federal Claims, we must look beyond the pleadings to the substance of the claim. We have cautioned litigant that dressing up a claim for money as one for equitable relief will not remove the claim from Tucker Act jurisdiction and make it an APA case.

Tortorella v. U.S, ___F.Supp.2d ___ (D.Mass. 2007), Civ. Action No. 06-10054-RGS, 2007 WL 1243939 *3 (Apr. 30, 2007)(citing Suburban Mortgage Assocs., Inc. v. HUD, 480 F.3d 1116, 1124 (Fed.Cir. 2007)). The "taste" of ¶ D(5) of the Plaintiff's Request for Relief is "overwhelmingly of a money award." See Tortorella , 2007 WL 1243939 *3. Thus, it belongs in the Court of Federal Claims.

## B.    JURISDICTION UNDER THE CONSENT DECREE

HUD stipulates that the Court has jurisdiction regarding matters of implementation, construction, and enforcement of the Consent Decree pursuant to Part IV of that decree. In spite of that specific and clear grant of jurisdiction, Plaintiff wants to move beyond the legal standards and requisite burden of proof that would encumber its machinations for damages and additional obligations it wants to put upon HUD that were never agreed to in the first instance. Thus, the Court has no jurisdiction to entertain or adjudicate any facts and claims asserted in the Supplemental Complaint as the original Complaint was extinguished forever as a means of asserting claims against HUD when it and the Plaintiff executed the very Consent Decree at issue.

### 1.    Consent Decree Interpretation

Consent decrees are a "hybrid form of judgment' including elements of both a contract and a judicial decree. Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 519 (1986). Consent decrees may be subject to some of the normal rules of contract interpretation and enforcement, but a court's power to apply those rules is carefully

"cabined" by the language used by the parties in the decree. <u>Cook v. City of Chicago</u>, 192 F.2d 693, 695 (7th Cir. 1999). These arise because consent decrees are products of negotiation between the parties. <u>United States v. Armour & Co.</u>, 402 U.S. 673, 682 (1971). In negotiating such agreements, the parties ultimately reach a compromise, surrendering their rights to litigate and potentially prevail in return for the promises expressed in the agreement. <u>Id.</u>

Like all other terms of a consent decree, the scope of the court's jurisdictional grant is subject to the narrow rules of construction applicable to the interpretation of consent decrees. As the Supreme Court has explained, courts must interpret decrees strictly, according to the words of the decree and not the parties' purposes entering into it:

> [T]he decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have bargaining power and skill to achieve. For these reasons, **the scope of a consent decree must be discerned within its four corners and not by reference to what might satisfy the purposes of one of the parties to it**. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.

<u>Armour</u>, 402 U.S. at 682 (emphasis added).

Notably, even the Court's purpose in approving the decree is excluded from the list. "A court may not replace the terms of a consent decree with its own, no matter how much of an improvement it would make in effectuating the decree's goals." <u>Barcia v. Sitkin</u>, 367

-23-

F.3d 87, 106 (2d Cir. 2004); see also Hughes v. United States, 342 U.S. 353, 356-57(1952)(the defendant having complied with the choice mandated in a consent decree to sell or place stock in trust, neither the court nor the government was free to interpret the decree's language to reach the result it preferred, even if to do so would best effectuate the purpose of the underlying statute); see also Harris v. City of Philadelphia, 137 F.3d 209, 213 (3d Cir. 1998)(because the four corners of the parties' agreement lacked a deadline, the district court could not impose one, no matter how efficient or socially desirable one would be); .

### 2. Jurisdiction Under the Consent Decree

As noted in the preceding paragraph, a court's power to interpret a grant of jurisdiction in a consent decree is carefully "cabined" by the language used by the parties in the decree. See Cook v. City of Chicago, 192 F.3d 693, 695)(7th Cir. 1999). The language governing the grant of jurisdiction to the Court is found in Part IV, p. 9 of the Decree:

> Jurisdiction is retained by the court for the purpose of enabling the plaintiff and HUD to apply to the court at any time for such further orders as may be necessary or appropriate for the construction, implementation, modification or enforcement of this Decree. However, no additional funding obligations not already explicitly contained in this Decree shall be imposed on HUD.

Id.

The language of this grant is clear and unambiguous: if Plaintiff seeks relief from a violation of the Decree or Modification Agreement, it must file a motion for further orders, motion for enforcement, or motion for civil contempt in order to comply with the limits of

-24-

the Court's jurisdiction, as defined and "cabined" the decree.  See Massachusetts Assoc. of Older Americans v. Commissioner of Public Welfare, 803 F.2d 3538 (1st Cir. 1986)(noting that there is a "wide variety of circumstances in which contempt proceedings may arise," such as "examining a decree issued in public law litigation").The Plaintiff's Supplemental Complaint does even attempt to operate under the grant of jurisdiction that it agreed to in the Decree. Further, as Part IV indicates, Plaintiff may not seek additional funding obligations. Id.; cf, Supplemental Complaint, Request for Relief, ¶ D(5), p. 16 ("HUD, the BHA, and the City shall, jointly or severally, provide $295,000.00 to MBHP to fund housing search counseling services in conjunction with its administration of 400 Litigation Vouchers transferred to the BHA.").

### 3.    Civil Contempt

Civil contempt is used to compel compliance with an order of the court, although in some circumstances it may be used to compensate the complainant for losses sustained. United States v. United Mine Workers of Am., 330 U.S. 258, 303-04 (1947); In re General Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995).[15]  The burden rests on the complainant to prove civil contempt by clear and convincing evidence. AMF Inc, v Jewett, 711 F.2d 1096, 1100 (1st Cir. 1983).  A court order must "be specific about what is to be done or avoided" and "it must have violated a clear and unambiguous order that left no reasonable doubt as to

---

[15] This language seems to describe the particular kind of relief the Plaintiff is entitled to under the Court's actual grant of injunctive power; compliance with the Consent Decree and compensation for actual losses.

what behavior was expected and who was expected to behave in the indicated fashion." Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 17 (1st Cir. 1991). Where the complainant seeks compensation, an additional restriction applies. The sought-after compensation must closely match the actual loss by the complainant; otherwise, the contempt fine becomes punitive in nature, necessitating all the due process procedures needed for criminal contempt proceedings. See United Mine Workers of Am., 330 U.S. at 304 (compensation for civil contempt "must of course be based upon evidence of the complainant's actual loss"); United States v. Professional Air Traffic Controllers Organization, 678 F.2d 1, 4 (1st Cir. 1982) (same).

Yet again, the essential question of whether HUD violated the terms of the Consent Decree and Modification Agreement begins and ends with the language of the Decree itself. The Consent Decree and the Modification Agreement do not grant this Court jurisdiction so that it may entertain new claims to be proven by a mere preponderance of evidence coupled with a remedy trial if HUD should fail to defeat a "summary judgment" based on the Supplemental Complaint. It does provide for a motion for enforcement that would be governed by the more exacting standards of civil contempt.

Plaintiff may argue that dismissing its Supplemental Complaint due to a lack of jurisdiction under the Supplemental Complaint is the epitome of elevating form over substance, as well as an abuse of judicial economy. The Consent Decree provides this Court as the forum for resolving disputes regarding implementation of the Decree and Modification

Agreement. Accordingly, the precise procedural means of adjudicating that dispute are irrelevant. On the contrary, as demonstrated in part V(B) of this brief, the particular legal standards applied to HUD regarding whether or not it violated the Decree are significant to HUD's substantive rights under the decree, if not indispensable to the factual and legal adjudication of the Plaintiff's claims.

## VI. <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should dismiss the Plaintiff's Supplemental Complaint for lack of jurisdiction. This Court has no jurisdiction to consider a dispositive motion that would adjudicate the facts asserted in the Supplemental Complaint. The Court lacks jurisdiction under the APA and under the Consent Decree to proceed on finding anything under the Supplemental Complaint. The instant motion should proceed as a Motion for Enforcement of the Consent Decree with the suitable procedural and substantive standards and case law applied to Plaintiff's assertions.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Gina Walcott-Torres

Gina Walcott-Torres
Assistant United States Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200
Boston, MA 02210
Dated: June 29, 2007                          (617) 748-3369

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

/s/ Gina Walcott-Torres

Gina Walcott-Torres
Dated: June 29, 2007                          Assistant U.S. Attorney